MICHAEL WALLACE *v.* STATE OF INDIANA.

[No. 977S671. Filed September 15, 1977.]

*Richard L. Swartz, Reading and Swartz,* of Wabash, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

### DISSENTING OPINION

PIVARNIK, J.—I dissent to the denial of transfer in this case.

The sole issue presented is whether defendant, who was permitted to represent himself, knowingly and intelligently waived his right to counsel. The Court of Appeals found that he did not, and reversed defendant's conviction. *Wallace* v. *State,* (1977) Ind. App., 361 N.E.2d 159. I would reverse the Court of Appeals decision and affirm the judgment of conviction made by the trial court.

Two weeks before defendant's trial, he had requested that an attorney be appointed to represent him. At this same time, defendant was informed of his rights and the applicable statutes were read to him. Defendant was declared indigent, and the court appointed Joseph Murphy as his counsel. After the first witness had been called at the beginning of the trial, defendant decided he would rather represent himself. The trial court permitted this, and dismissed Mr. Murphy, after the following exchange:

DEFENDANT: I would like to represent myself in this case. Would it be all right with the Court if Mr. Murphy still can be present and sit beside me?

THE COURT: Well, now, you're not going to go both ways on this, Mr. Wallace. You asked for an attorney, I appointed an attorney for you, he's here to represent you, and you can't go both ways on it.

DEFENDANT: I'll represent myself, then, your Honor.

THE COURT: All right.

MR. MURPHY: Wait a minute, now. Do you want me to advise you as to. . . .

THE COURT: No, you won't advise him. If he has you as his attorney, you're going to be his attorney. If he's going to represent himself, he will represent himself.

MR. MURPHY: Wait a minute. Do you understand what you are doing?

DEFENDANT: Yes, I do.

MR. MURPHY: Do you want me to stand by and advise you? I'll do it.

THE COURT: No, you are not going to stand by and advise him about anything. He's either going to have an attorney or he's not going to have an attorney.

DEFENDANT: I'll represent myself.

THE COURT: All right.

First of all, it should be recognized that the trial court's statement to defendant Wallace that he could not "go both ways on it" was a correct statement of the law. In a recent case where a defendant attempted to supersede his attorney at trial and act as co-counsel, so that he could personally cross-examine a prosecution witness, we held that such "hybrid representation" is a matter of discretion with the trial judge since no constitutional right to hybrid representation exists. *Bradberry* v. *State*, (1977) 266 Ind. 530, 364 N.E.2d 1183. Our decision in *Bradberry* recognized that the case of *Faretta* v. *California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, was not to the contrary on the issue of hybrid representation: that opinion was only to the effect that defendants have a right to represent themselves, and that court-appointed attorneys cannot be *forced* on them. *Bradberry* is also consistent with several other post-*Faretta* decisions, which have specifically reviewed *Faretta* and come to the conclusion that there is no right to hybrid representation. *Maynard* v. *Meachum*, (1st Cir. 1975) 545 F.2d 273, 277; *United States* v.

*Wolfish,* (2d Cir. 1975) 525 F.2d 457, 462-63, *cert. denied,* 423 U.S. 1059, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976) ; *United States* v. *Williams,* (8th Cir. 1976) 534 F.2d 119, 123, *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976) ; *United States* v. *Hill,* (10th Cir. 1975) 526 F.2d 1019, 1024-25, *cert. denied,* 425 U.S. 940, 96 S.Ct. 1976, 48 L.Ed.2d 182 (1976) ; *United States* v. *Swinton,* (S.D. N.Y. 1975) 400 F.Supp. 805, 806-07; *United States* v. *Gaines,* (N.D. Ind. 1976) 416 F.Supp. 1047, 1050-51; *State* v. *Burgin,* (Mo. App. 1976) 539 S.W.2d 652, 654; *Stiner* v. *State,* (Okla. Ct. Crim. App. 1975) 539 P.2d 750, 753.

The leading case on hybrid representation is the Tenth Circuit's opinion in *Hill, supra.* There, as here, the defendant moved on the morning of trial for permission to represent himself along with his attorney. *Hill* reviewed authority prior to *Faretta,* where the rule was "that defendant had a right to represent himself or to be represented by counsel but did not have a right to hybrid representation." 526 F.2d at 1024. The court then stated that hybrid representation was still a matter of the trial court's discretion *after Faretta,* because the language of neither the *Faretta* opinion itself nor the Sixth Amendment of the Constitution creates such a right. 526 F.2d at 1024-25.

The key difference between the present case and *Hill* is that here, defendant was allowed to proceed *pro se* and represent himself. In *Hill,* defendant's motion for hybrid representation was denied and the Tenth Circuit upheld such denial. The case was tried solely by Hill's counsel. The irony, then, is that the present conviction is being reversed even though the trial court's action was consistent with the holding of the *Faretta* case: defendant Wallace was given his constitutional right to represent himself, and appointed counsel was not "forced" on him. This being done, the only reason for reversal is that defendant Wallace "did not knowingly and intelligently waive his right to counsel." A trial judge, in a case such as the present one, thus faces a dilemma which was

described by the court in *Stepp* v. *Estelle,* (5th Cir. 1975) 524 F.2d 447, 455:

> "Petitioner's strategy was bound to give him a point for a post-conviction action, whichever way the trial judge ruled. If he had refused petitioner's request to be allowed to conduct his own defense, petitioner would have claimed he was denied his right of self-representation. When he granted the request, he put petitioner in position to claim he lacked the capacity to make a knowing and intelligent choice between assistance of counsel and self-representation."

Turning now to the precise issue of whether defendant Wallace "knowingly and intelligently" waived his right to counsel, it should be first noted that defendant requested counsel two weeks before trial. This act demonstrates defendant's knowledge of both his rights and his need for assistance. Attorney Murphy was appointed and represented the defendant all through the pre-trial stages of this cause, and there is no claim that this was done in an incompetent manner. Thus, it was at a later juncture, after having already worked with counsel and after commencement of the trial, that defendant asked to represent himself. The trial court advised defendant that he had a right to do this or, in the alternative, had a right to counsel. Defendant told the court that he would proceed himself, without counsel, and also stated in the record that he understood what he was doing.

At this point of time, the presumption that defendant knew what he was doing should operate, as stated in our controlling precedent of *Placencia* v. *State,* (1971) 256 Ind. 314, 317, 268 N.E.2d 613, 614:

> "[T]he trial court, after having expressly advised an accused of his right to counsel and having been informed by the accused that he wishes to proceed pro se, that decision appearing to have been knowingly, voluntarily and intelligently made, would be entitled to proceed with trial. In such a case the accused must take the consequences of his own deliberate act and is presumed to accept the burden and hazards incident to his position. See, *Franklin* v. *State*

(1955), 234 Ind. 418, 126 N.E.2d 768; *Blanton* v. *State* (1951), 229 Ind. 701, 98 N.E.2d 186.

"Here the appellant was advised on several occasions that he had the right to be assisted by trial counsel; nevertheless he chose to proceed pro se. In such a situation it is reasonable to presume that the implications and consequences have been considered by the accused and that his decision is a conscious election to assume the risks incident to a trial conducted without benefit of counsel. One such risk clearly is the development of circumstances with which the accused will be incapable of coping. Nevertheless he has made a decision which we feel can reasonably be construed to be binding throughout the course of the trial."

The Court of Appeals decision in the present case, as correctly pointed out by the state's transfer petition, contravenes the above-quoted precedent. Instead, it relies upon the following language from *Faretta* in support of its proposition that the trial court's action was reversible error:

"[H]e [the defendant] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows' what he is doing and his choice is made with his eyes open.' Adams v. United States ex rel. McCann, 317 U.S., at 279, 63 S.Ct., at 242."

*Wallace, supra,* 361 N.E.2d at 159, quoting *Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581-82. The Court of Appeals construed this language about advising defendants about the consequences of self-representation as mandatory. Such language is, however, only advisory and not a constitutional requirement. What *Faretta* mandates, rather, is that defendant "knowingly and intelligently" waive the benefit of counsel, under the rule of *Johnson* v. *Zerbst*, (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. *Faretta, id.* As demonstrated earlier, defendant Wallace had appointed counsel at his own request before trial, and voluntarily waived such counsel at trial, stating that he knew what he was doing. We can presume that defendant knew that he was not himself a lawyer, and that he was without the background of the counsel he had worked with, Mr. Murphy. He was informed earlier of what the charges against him were, and the possible

penalties therefor, yet proceeded anyway. This is the substance of what is required by *Von Moltke* v. *Gillies*, (1948) 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, cited in *Faretta, id.*, and it is the substance rather than the formula of *Von Moltke* which must be complied with. *See LaPlante* v. *Wolff*, (8th Cir. 1974) 505 F.2d 780, *cert. denied*, 420 U.S. 995, 95 S.Ct. 1436, 43 L.Ed.2d 678 (1975) ; *Spanbauer* v. *Burke*, (7th Cir. 1966) 374 F.2d 67, *cert. denied* 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967) : Dix, *Waiver in Criminal Procedure: A Brief for More Careful Analysis*, 55 Tex. L. Rev. 193, 236-39 (1977). Thus, the requirements of *Johnson* and *Faretta* have been complied with. There is a clear record of waiver here, unlike those cases involving *"silent* records" on the issue of waiver of constitutional rights. *Cf. Boykin* v. *Alabama*, (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. The trial court's actions carry with them a presumption of validity, and defendants thus carry the burden of showing that they did not competently and intelligently waive the right to counsel. *Johnson*, 304 U.S. at 468-69, 58 S.Ct. at 1025, 82 L.Ed. at 1468-69. A refusal without good cause to proceed with able appointed counsel is a voluntary waiver of counsel. *United States ex rel. Testamark* v. *Vincent*, (2d Cir. 1974) 496 F.2d 641. Defendant Wallace never told the court what his reason was for dismissing Mr. Murphy, beyond his desire to proceed *pro se*, and his statements at this time directly rebut any possible inferences that he did not know what he was doing.

Neither the Court of Appeals in reversing this conviction, nor the langauge of *Faretta* upon which it relies, tells the trial judge exactly what he should have told the defendant in order to avoid error. It is difficult to justify reversing a conviction on such a vague directive as, "defendant must have his eyes open," without giving the trial court any further guidance. "This colloquial formulation of the standard suggests that there is no particular piece of information that is essential to an effective waiver of counsel." *Maynard* v. *Meachum*, (1st Cir. 1976) 545 F.2d 273, 279. Reversing on

such a colloquial formulation, however, without making any further attempt to define it, also implies that this case would be reversed again after remand and retrial. Not only is the "eyes open" standard vague, but it is also essentially purposeless. If the defendant announces that he intends to represent himself it is error under the authority of *Faretta* to refuse this request, even if the judge determines after a detailed examination of defendant on his understanding of the law that the waiver is not knowing or intelligent. Such a detailed examination was in fact made in *Faretta*, on the rules of evidence and jury challenge. On the other hand, a cursory warning to the effect that there are "dangers and disadvantages" involved in self-representation would do nothing more than tell the defendant what he already knows: that he is not an attorney.

Finally, a holding that one must be warned that there are "dangers and disadvantages" involved in self-representation necessarily presupposes that such dangers are, in fact, involved. The *Faretta* opinion itself recognized that in some cases, self-representation might even be more effective than representation by counsel. *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540, 45 L.Ed.2d at 581. As stated by the court in *Stepp* v. *Estelle,* (5th Cir. 1975) 524 F.2d 447 at 455:

> "Where the defendant is without counsel, he has a chance to get the sympathy of the jury, and the prosecutor has to tread softly to avoid giving the impression that he is taking undue advantage. If proceeding without counsel fails to help the accused before the jury, he finds that the appellant and post-conviction courts are more lenient with him. These things usually apply to a case which appears hopeless to the defendant, where there is very little a lawyer can do for him. This was such a case. There was no chance to win it on the facts, and there was nothing complicated about the law."

The present situation is also of the sort described by the *Stepp* case, and belies the assumption about the "dangers and disadvantages" of self-representation. There is no allegation by the defendant, nor any evidence whatsoever in this record

to indicate that defendant did not get a fair trial. The transcript shows that the defendant took an active part in his defense. He objected when improper questions were asked by the prosecuting attorney, and some answers by witnesses were found objectionable by the court. He argued points of law with the prosecuting attorney and the court ruled in his favor several times. He conducted cross-examination of the state's witnesses, and was able at one point to get the principal witness against him to admit defendant's having testified against such witness in a case where the witness was convicted. Although defendant Wallace could have received sentences from one to five years with a fine of $500 for theft, and two to fourteen years with a fine of $5,000 for conspiracy, he was able to avoid any fines and received a sentence of only one year for theft and had his sentece of two to fourteen years for conspiracy suspended.

There is no place in the record where defendant asked for relief or indicated to the court that he was having difficulty. There is no allegation that improper evidence was permitted by the court, or that improper instructions were given to the jury. There is no allegation that any legal or tactical error was made that could have been corrected by an attorney having been at defendant's side representing him at every step.

In summary, the trial judge's action here was consistent with what the *Faretta* case most clearly held: that defendants have the right of self-representation and that counsel cannot be forced on them. Yet, the conviction is being reversed on a proposition not clearly or definitely mandated by *Faretta:* that some specific advices on the dangers of self-representation must be given in these cases. This defendant simply asks this court to grant him another trial, when he has already had the trial he requested and which was fair and free of legal error.

Givan, C.J., concurs.

NOTE.—Reported at 366 N.E.2d 1176.