JOHN LEON ANDERSON v. STATE OF INDIANA.

[No. 576S153. Filed December 5, 1977.]

*Harriette Bailey Conn,* Public Defender of Indiana, *David P. Freund, Bobby Jay Small, Jerrilee P. Sutherlin,* Deputy Public Defenders, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Roland Duvall,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Anderson was found guilty of first-degree murder on June 12, 1975, after a jury trial in Elkhart Superior Court. He received a sentence of life imprisonment. The crime in question is the killing of Isadore Goodman, a clerk in Rapp's clothing store in Elkhart, on July 24, 1974.

Three errors are alleged in this appeal: (1) whether the trial court erred in refusing to allow appellant to represent himself; (2) whether the trial court erred in refusing to admit testimony for the purpose of impeachment of a prosecution witness; (3) whether there is an error preserved relating to an alleged refusal of the trial court to take judicial notice of criminal proceedings pending against a prosecution witness.

## I.

Appellant first asserts that he was denied his constitutional right to represent himself and that appointed counsel was forced on him, contrary to *Faretta* v. *California,* (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. An examination of the sequence of events before trial is necessary for the resolution of this question.

On August 8, 1974, appellant Anderson appeared in court unrepresented by counsel for a preliminary arraignment. The trial court inquired as to whether Anderson intended to employ an attorney or wished the court to appoint one for him. Anderson did not answer the court's questions directly, became unruly, and was sent back to jail.

On August 15, Anderson informed the court that he did not want appointed counsel because he was going to employ his own. Anderson stated that he needed only a week to do this, and was thus granted a continuance.

Appellant Anderson next appeared in court on August 22. At this time he informed the court that someone had obtained a lawyer for him, but that he did not know this lawyer's name. He was granted another continuance.

On August 29, Anderson told the court that "his people" had misled him about having hired a lawyer, and that he did not yet have a lawyer. He told the court that he needed more time because, "I can't stand to have no state lawyer." The court appointed Donald Jones as Anderson's counsel. Anderson repeated that he did not want a state lawyer, and stated that he did not want Jones and would not speak to Jones. Jones was furnished with a copy of the indictment, and the arraignment was again continued. Appellant was informed again that he could engage an attorney of his own selection, and that Jones would be replaced if this were done.

On September 5, appellant Anderson appeared in court with attorney Jones. Jones informed the court that Anderson had refused to talk to him. The court offered the services of another public defender, David Denton, but Anderson also refused to talk to him. Anderson was then asked if there was any practicing attorney in Elkhart County who he would accept. Anderson replied affirmatively, and expressed a preference for Mr. Richard Sproull of Elkhart. The court then appointed Sproull and granted a fourth continuance of arraignment.

Appellant appeared for arraignment on September 12 with attorney Sproull. Sproull stated to the court that he was unable to accept the appointment as Anderson's lawyer because of his work load, and the court accepted Sproull's request to be relieved. The following colloquy then took place:

"THE COURT: All right. Well, now, Mr. Anderson, Mr. Sproull has declined this appointment as your counsel. Have you made any further arrangements to employ private counsel?

ANDERSON: No, I don't know what my people are doing.

THE COURT: You don't?

ANDERSON: No.

THE COURT: Well, what I am going to do, Mr. Anderson, at this time, I am going to appoint Mr. Denton and Mr. Jones of the Public Defender's staff to represent and counsel with you, and I'll enter a plea of not guilty at this time on this charge.

ANDERSON: You mean you are going to enter my plea and I can't enter my own plea.

THE COURT: You can do that. In other words, so that we can commence this matter—you have been in here, what, two or three times now and I have given you every opportunity, Mr. Anderson, to employ counsel which you have informed the court that you intended to do.

ANDERSON: Yeah, how am I supposed to employ counsel when I am sitting over there in jail and my people keep giving me a run around about this and that.

THE COURT: Would you rather I not enter the plea for you at this time?

ANDERSON: I rather not you enter a plea and I rather not you have no state appointed attorneys to come over and talk to me. I rather get my own attorney. Some kind of way, I'll get it.

THE COURT: Well, nevertheless, I am going to appoint Mr. Denton and Mr. Jones and I'll continue your arraignment and I'll withdraw my own motion to enter a plea of not guilty and, if you, in the meantime, employ private counsel, that's fine. He can enter his appearance and I'll withdraw the appointment of Mr. Jones and Mr. Denton. Eventually, as I say, this matter is going to have to be disposed of. You either will employ

private counsel or accept the counsel the court appoints for you or you will have to represent yourself. Now, one of the two things.

ANDERSON: Well, I would rather represent myself if I can't get no lawyer.

THE COURT: All right, You have the right if you so desire it. The court at this time now appoints Attorneys Donald W. Jones and David Denton of the Public Defender's staff to counsel with and represent the defendant and now continues the defendant's arraignment."

On September 16, appellant Anderson appeared in court with his two appointed attorneys. At this time the court entered a plea of not guilty subject to be withdrawn if Anderson was able to procure a private attorney.

On January 6, 1975, attorney Jones informed the court that appellant Anderson had accepted both his appointment and that of attorney Denton, since Anderson had been unable to procure private counsel. A docket entry to this effect was made.

Summarizing the above record, it can be said that in its entirety it reflects a desire of appellant Anderson to procure private counsel. He was unable to do so, either because he lacked the funds for this or because his desire was not too serious. The only mention of self-representation was during the colloquy on September 12, when Denton and Jones were appointed and appellant stated that, "I would rather represent myself if I can't get no lawyer." This matter was never raised again. Appellant's *Faretta* argument is thus grounded upon a single statement which was conditional, ambiguous, and more of a generalized expression of feeling than an assertion of a right.

The *Faretta* case held that criminal defendants have a right to represent themselves pursuant to the Sixth Amendment of the Constitution of the United States, when this choice is made voluntarily and intelligently. In such situations, *Faretta* held that it is erroneous for the trial court to "force" court-appointed counsel on defendants. The present case does not

involve questions about what must be done when the right of self-representation is asserted. *Cf. Wallace* v. *State,* (1977) Ind. App., 361 N.E.2d 159, *transfer denied,* 267 Ind. 43, 366 N.E.2d 1176 (1977). Rather, the question is a threshold one concerning what is necessary to constitute an assertion of the right.

In *Faretta,* the defendant "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. Courts which have been presented with factual situations similar to the present one have held that such a clear and unequivocal request to proceed pro se must be made by the criminal defendant, as a prerequisite to the assertion of the right of self-representation. *United States ex rel. Maldonado* v. *Denno,* (2d Cir. 1965) 348 F.2d 12, 15-16, *cert. denied, DiBlasi* v. *McMann,* (1966) 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1920; *Meeks* v. *Craven,* (9th Cir. 1973) 482 F.2d 465, 467-68; *United States* v. *Bennett,* (10th Cir. 1976) 539 F.2d 45, 51, *cert. denied,* (1976) 429 U.S. 925, 97 S.Ct. 1976, 50 L.Ed.2d 293. We agree that a clear and unequivocal request must be made. It must be, "sufficiently clear that if it is granted the defendant should not be able to turn about and urge that he was improperly denied counsel." *Meeks, supra.* If the rule were otherwise, trial courts would be in a position to be manipulated by defendants "clever enough to record an equivocal request to proceed without counsel in the expectation of a guaranteed error no matter which way the trial court rules." *Id.* We find that nothing in the record of this case or in the statements of appellant Anderson amounts to a clear and unequivocal assertion of the right to proceed pro se, and thus hold that there is no merit in appellant's *Faretta* argument.

## II.

Appellant's next argument is that the trial court erroneously refused to admit testimony for the purpose of impeachment

of prosecution witness Tom Brown. Brown testified that while appellant Anderson was at the state prison in Michigan City for safe-keeping pending his trial in this cause, they met and had several conversations. Brown and appellant went to school together and had known each other for a number of years. Brown testified in particular about a conversation in November of 1974, during which appellant made admissions about his involvement in the murder in question. Anderson was quoted by Brown as saying that he went into Rapp's store on the morning of the murder, that he attempted to have the decedent cash a fifty-dollar bill for him, that during the transaction he struck the deceased on the head several times with a hammer, and that he then took money from the store and fled with it. Anderson further told Brown that he obtained one hundred and fifteen dollars from the store, and that he had one hundred and thirteen dollars in his pocket when he was arrested because he had spent two dollars for some food. Finally, Brown quoted Anderson as saying that he later detected blood on his clothes and shoes, and that he had washed the blood from his shoes and had changed his clothes when he arrived at his place of work at a foundry in Elkhart.

During his case in chief, the appellant attempted to call Raymond Mellott and Paul Moore, both of whom were in a cell-block in the Elkhart County jail in May of 1975 at the same time as Brown and appellant, and both of whom overheard a conversation between Brown and appellant at this time. The alleged purpose of calling Mellott and Moore was for the impeachment of Brown's testimony about his conversations with appellant in Michigan City in November of 1974. The state objected to both of these witnesses on several grounds, including the failure of the appellant to lay a foundation for this attempted impeachment during cross-examination of Brown. Brown was very thoroughly cross-examined by appellant's counsel but there was no mention, nor was any question asked, with reference to a conversation in the Elkhart County jail in the presence of these two witnesses or at any

other time. Brown was cross-examined about a conversation that he had with police officers at a different time during his stay in the Elkhart County jail, on another matter involving Brown and appellant, not pertinent to this issue.

In his offer to prove at trial, after refusal of the testimony of Moore, appellant stated the following:

### "OFFER TO PROVE

"MR. JONES: May it please the court, we would offer to prove that if the witness, Paul Moore, was permitted to continue his testimony, he would testify that Tom Brown initiated a conversation with the defendant, John Anderson, that conversation consisted of Mr. Brown's asking certain questions of Mr. Anderson concerning the facts of the case and specifically, that how much money was taken from the defendant, to which he replied: '$113.00.' That the defendant, in response to Mr. Brown's questions, indicated that $136.00 and some odd cents was alleged to have been missing; that the defendant was told that blood was found on his shoes, but that it could not be typed; that the defendant was told that one of the Lieutenants on the Elkhart Police Department found a hammer at Rapp's Store and some other things, but did not specifically mention those things, that Mr. Brown continued to ask questions of the defendant relating to the evidence which the State of Indiana supposedly has against the defendant and that the defendant gave answers to those questions. We further propose that the witness also would testify that Mr. Brown indicated to him that he had a girl friend by the name of Joyce whom he had planned to marry once he was out of jail. We further propose that the witness would also testify that the defendant told him that at the time of the alleged homicide, he had money of his own on his person. That is the extent of the Offer to Prove.

"I might add in the Offer to Prove that there were other matters contained in the conversation but that those matters are totally unrelated to this cause of action and that we would not propose to ask any questions of this witness that would be related to any other matter and that all questions would be related solely to this specific cause of action."

Appellant's offer to prove with reference to witness Mellott is substantially the same as that proposed and offered for

witness Moore. It is alleged by appellant that the impeaching aspect of Mellott's and Moore's testimony, had it been permitted by the court, would have been to show that witness Brown initiated the conversation with appellant and asked him questions. This would have been suspect, the argument goes, because Brown already knew the facts based on his earlier conversation with appellant in Michigan City in November of 1974. Further, Mellott's and Moore's testimony would have tended to show that appellant had simply told Brown what evidentiary facts he believed the police had against him, rather than stating those facts in such a manner as to constitute an admission of his independent knowledge of them.

The impeaching characteristics of the rejected testimony of Mellott and Moore are very subtle, at best. The trial court did indicate to appellant that he would allow the witnesses to testify that Brown initiated the conversations with appellant and asked the questions which elicited appellant's answers. The court would not, however, permit the witnesses' testimony as to the substance of the conversations had. It also became apparent in a discussion between counsel outside of the presence of the jury, that other collateral issues would arise if conversations between these four people were opened before the jury. One of these collateral issues would have been a discussion by appellant involving another murder.

When a witness is to be impeached, a proper foundation must first be laid. This is accomplished by bringing to the witness' attention the circumstances under which the contradictory statements were made. *Gradison* v. *State*, (1973) 260 Ind. 688, 300 N.E.2d 67; *Carter* v. *State*, (1976) Ind. App., 353 N.E.2d 495, 498, and cases cited therein. No foundation whatever was laid in the cross-examination of witness Brown for this attempt at impeachment, since nothing was elicited concerning the allegedly overheard conversations in the Elkhart County jail in May 1975. Furthermore, there was not such an impeaching aspect in the

offered testimony of Mellott and Moore as to make rejection of their testimony erroneous. The clearest impeaching aspect of their purported story, that Brown led off the conversation with appellant while already knowing appellant's version of the murder from the November 1974 conversation, would have been allowed into evidence by the court. Appellant, however, chose not to admit this part of Mellott's and Moore's testimony. The trial court thus did not err in sustaining the prosecution's objection to this offered testimony.

## III.

Appellant's final argument is that the trial court erroneously refused to take judicial notice of criminal proceedings pending against prosecution witness Brown. Appellant alleges that Brown received promises of leniency in exchange for his testimony. Brown's testimony at trial was that he neither received promises nor expected any rewards in exchange for his testimony.

The error complained of was not contained in the record of this case as originally filed. No request of the court to introduce the docket sheet of Brown's case is shown, nor is there any record of an offer to prove. Subsequent to the trial, however, affidavits have been filed by both defense attorneys for appellant, and by the prosecuting attorney in this case. An order of the trial court has also been filed, upon appellant's motion to settle the record after the filing of all the affidavits.

The affidavits and order of the lower court do not clear up the disputed issue here with sufficient certainty. Defense counsel in their affidavits state that they requested the trial court, out of the presence of the jury, to take judicial notice of the proceedings against Brown and that they offered to prove the docket sheet, but that all of these requests were refused by the court. The prosecutor's affidavit states that he does not recall any offer to prove the docket sheet of Brown's case. In his order, the trial court

states only that he has a present recollection of there being some discussion of the matter, although he does not recall what exactly transpired. The court also states that he has no recollection of the docket sheet in Brown's case being offered into evidence, and is able to find no indication of such an offer in the record. In summary, as the record in this case now stands, there is no record before this court showing: the defendant's request to enter the docket sheet of Brown's case into evidence, or the defendant's offer of proof during trial; the trial court's consideration of any objection by the state to such offer of evidence, or; the trial court's ruling as to such offer of evidence. In the total absence of a proper record, the issue alleged here is without merit for the reason that there is nothing of substance before this court for the purpose of review. *Gurley* v. *State,* (1976) 264 Ind. 552, 348 N.E.2d 16, 20; *Chatman* v. *State,* (1975) 263 Ind. 531, 549, 334 N.E.2d 673, 684.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 370 N.E.2d 318.