**Eddie M. TAYLOR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A03–1003–CR–256.

Court of Appeals of Indiana.

March 3, 2011.

Daniel K. Whitehead, Yorktown, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Eddie M. Taylor ("Taylor") was convicted in Elkhart Superior Court of Class A felony dealing in cocaine and Class B felony dealing in cocaine. On appeal, Taylor claims that he was denied his Sixth Amendment right to counsel when the trial court granted Taylor's request to proceed pro se. We affirm.

### Facts and Procedural History

On March 9, 2007, the State charged Taylor with two counts of dealing in cocaine, one as a Class A felony, and the other as a Class B felony. Taylor was released on bond and expressed his desire and intention to retain private counsel to represent him. The chronological case summary ("CCS") indicates that the trial court granted Taylor two continuances in order to find private counsel. Taylor's efforts were apparently unfruitful, and he requested the trial court to appoint counsel on May 21, 2007. The trial court appointed the local public defender agency to represent Taylor, and a public defender filed an appearance as Taylor's attorney on June 6, 2007. As early as December 6, 2007, Taylor indicated that he wished to represent himself,[1] but the public defender continued to represent Taylor, and a jury trial was scheduled for June 9, 2008.

On March 19, 2008, Taylor's original public defender counsel withdrew his appearance, and another public defender entered an appearance as Taylor's attorney. The trial court subsequently granted a motion to continue filed by this attorney and set a scheduling conference for June 5, 2008, to choose a new trial date. At the June 5 scheduling conference, Taylor personally objected to the continuance despite his attorney's request for the continuance to allow more time to prepare for trial. Taylor claimed that his counsel had not come to see him and that he never got to discuss his case with his counsel. Tr. p. 22. This was contradicted by his attorney's claim that she had visited Taylor twice in jail to discuss his case. *Id.* Taylor

---

1. While Taylor was out on bond in this case, he was arrested and charged with two other counts of Class B felony dealing in cocaine in Cause No. 20D03–0711–FB–79 ("Cause No. FB–79"), and was again put in jail. In a hearing before the same trial court in Cause No. FB–79, Taylor indicated that he wished to represent himself, and the trial court continued a hearing in the instant case for this reason. Apparently, both this case and the other pending case were discussed at some pre-trial hearings, but no transcript of the December 6, 2007 hearing, at which Taylor indicated his desire to represent himself, is in the record before us. Nevertheless, the December 6 CCS entry for the present case states: "Parties appear by counsel for PRE-TRIAL CONFERENCE. Based on Deft's indication in open court in [Cause No. FB–79] that he desires to represent himself, PTC continued to 12/20/07, at 1:30 p.m. with all delay chargeable to the defendant for CR 4 purposes." Appellant's App. p. 5.

also insisted that he should personally be provided with his file, any discovery materials, and any exhibits to be used against him at trial. The trial court explained to Taylor that his counsel had access to such items and that, as a jail inmate, he would not be allowed the same kind of access. The court then set the jury trial for January 5, 2009.

On October 22, 2008, Taylor sent a handwritten note to the trial court requesting transcripts of the prior proceedings in this case, claiming he needed such to prepare for his defense. The trial court declined these requests as Taylor was still represented by counsel. *See Kindred v. State*, 521 N.E.2d 320, 325 (Ind.1988) (noting that trial court has discretion to strike pro se filings where party is also represented by counsel). At another hearing held on December 31, 2008, Taylor's attorney requested a continuance and informed the court that Taylor wanted the cocaine evidence to be reweighed based on his belief that the amount of cocaine was less than originally indicated. The trial court granted the continuance but indicated that Taylor would have to file a motion to compel the State to reweigh its evidence.

At another hearing held on February 12, 2009, Taylor informed the trial court that his attorney refused to file a motion to compel the State to reweigh the cocaine evidence. Taylor therefore informed the trial court, "I would like to fire my attorney since she won't file the motions that I asked to be filed." Tr. p. 33. After his attorney explained that she had not filed the motion because she did not believe it would be successful on the merits, Taylor asked the court, "So can I go forward to fire my attorney?" *Id.* at 34. The following colloquy then took place between Taylor and the trial court:

[Court]: Depends on what you mean by firing your attorney.

[Taylor]: So I can go pro se.

[Court]: Don't interrupt me, please. It depends on what you mean by firing your attorney and what you intend to do after she is discharged, if that is accomplished.

[Taylor]: I plan on acting as my own attorney until I can hire one. Me and my family right now are seeking into try [sic] to hire me [an] attorney.

[Court]: You don't intend to represent yourself, or do you?

[Taylor]: I'm trying to represent myself until—until one—one can be—

[Court]: I'm sorry, you're trying to represent yourself what?

[Taylor]: Until one can be purchased for me. So until then I would like to fire my attorney and go pro se so I can file my own motions and things of that nature.

[Court]: It is ill-advised for a layperson to proceed pro se when faced with a serious criminal charge, and you are faced with two serious charges, a class A and class B felony.

[Taylor]: Yes.

[Court]: You could be sentenced to as much as 70 years in prison if you are convicted of both of those crimes. How far did you go in school?

[Taylor]: Eleventh grade.

[Court]: I know you've had previous contact with the criminal justice system.

[Taylor]: Excuse me?

[Court]: Is it true that you've had previous contact with the criminal justice system?

[Taylor]: Yes.

[Court]: Mr. Taylor, I have—I'm a lawyer. I was a deputy prosecutor for 20 years. I was a public defender for two years. I've been a trial court

judge dealing primarily with criminal cases for 12 years. If I were charged with a criminal offense such as this, either one of these offenses, I would hire someone to lawyer—to represent me as a lawyer. And I venture to say I know a good deal more about the criminal law than you do.

[Taylor]: Yes.

[Court]: I think what you're doing is foolish, but you have a right to do it if that's what you want to do.

[Taylor]: Yes, it is.

[Court]: I—all right. I'll show the appearance of the Public Defender's Office withdrawn.

*Id.* at 34–36. Taylor then asked the trial court for additional time to file his motions, which the trial court granted, and the trial was rescheduled for May 18, 2009.

On February 27, 2009, Taylor filed a pro se motion for change of venue and a motion for discovery. In these motions, Taylor claimed his attorneys had misinformed him that he could not file a motion for change of venue and explicitly stated that he had asserted his Sixth Amendment right to self representation. Appellant's App. p. 99. A hearing on these motions was held on April 2, 2009, at which Taylor argued that he wanted the case to be heard by another judge based on his belief that the current trial judge was biased against him. The trial court concluded that Taylor's motion was mislabeled and not in the proper form, and denied the motion. The trial court then set a date by which all discovery should be completed.

On April 13, 2009, Taylor filed a pro se motion to continue the trial claiming he needed additional time to prepare for trial. At the April 30, 2009 hearing on this motion, Taylor claimed that he and his family had retained private counsel. The trial court denied Taylor's motion to continue but explained that if Taylor's attorney filed an appearance, the court would grant a motion to continue if the new attorney filed such a motion. The court also set a hearing on Taylor's claim that the State had not provided certain discovery materials to him.

At the May 7, 2009 discovery hearing, Taylor indicated again that he had hired a private attorney who would soon enter an appearance on his behalf. The trial court ordered Taylor to provide discovery materials to the State, and the State indicated that it was prepared for the scheduled May 18, 2009 trial date. Taylor, however, indicated that he would not be prepared for trial on the scheduled date. The trial court reluctantly agreed to continue the trial to November 30, 2009 over the State's objection. The court later continued the trial date *sua sponte* to December 1, 2009.

At a pre-trial conference held on November 20, 2009, Taylor again claimed that he was unprepared for trial and that the State had not provided him with all of his requested discovery materials. Taylor also requested a continuance of the scheduled trial date. The trial court was able to convince Taylor that he had received the proper discovery materials and denied the requested continuance. On November 30, 2009, the day before the scheduled trial, Taylor again claimed that the State had not provided him with all of his requested discovery materials and again moved to continue the trial date. As the trial court discussed with Taylor the specific discovery materials he claimed to be missing, Taylor admitted, "I am really not prepared for this case because I am not a trained attorney. We all know this." Tr. p. 81. Taylor admitted that the trial court had warned him about his decision to proceed pro se, but claimed that he was dissatisfied with his prior attorneys. The trial court noted that Taylor was in a situation of his own making, but nevertheless offered to

appoint Taylor counsel, to either represent Taylor or act as stand-by counsel, due to the serious charges against him. Taylor decided to be represented by appointed counsel. The trial court then continued the trial to February 8, 2010.

Another attorney from the public defender's office—Taylor's third public defender counsel—filed an appearance on Taylor's behalf on December 7, 2009, and proceeded to represent Taylor at trial and during sentencing. At trial, Taylor was found guilty of Class A and Class B felony dealing in cocaine. At a sentencing hearing held on February 25, 2010, the trial court sentenced Taylor to concurrent terms of forty years on the Class A felony conviction and fifteen years on the Class B felony conviction. Taylor now appeals.

### Discussion and Decision

 The right of self-representation is implicit in the Sixth Amendment to the United States Constitution, and Article 1, § 13 of the Indiana Constitution also guarantees this right. *Stroud v. State,* 809 N.E.2d 274, 279 (Ind.2004). A defendant's request to proceed pro se must be clear and unequivocal, and it must be made within a reasonable time prior to the first day of trial. *Id.* In the present case, Taylor first claims that he did not make an unequivocal request to proceed pro se. We are unable to agree.

Taylor clearly told the trial court at the February 12, 2009 hearing, "I would like to fire my attorney," and when asked why he wanted to fire his attorney, he responded, "So I can go pro se." Tr. p. 33. He also stated, "I plan on acting as my own attorney until I can hire one." *Id.* And when the trial court told Taylor that he had the right to proceed pro se if he so desired, Taylor responded, "Yes, it is." Tr. p. 34. We are unable to see how Taylor's request could have been more clear and unequivocal. Furthermore, in his subsequent pro

se filings, Taylor actually referenced the fact that he had exercised his Sixth Amendment right to proceed pro se. Appellant's App. p. 99. Under these facts and circumstances, we conclude that Taylor's request to proceed pro se was clear and unequivocal. *See Dowell v. State,* 557 N.E.2d 1063, 1065 (Ind.Ct.App.1990) (concluding that defendant did make clear and unequivocal request to proceed pro se where he asked trial court if he could "talk for [himself]" if he was unable to hire his own counsel, defendant indicated that he did not want the services of his appointed counsel, and defendant answered in the affirmative when asked twice before trial if he wished to represent himself); *cf. Anderson v. State,* 267 Ind. 289, 293–94, 370 N.E.2d 318, 320–21 (1977) (concluding that defendant did not make clear and unequivocal assertion of right to proceed pro se where he expressed dissatisfaction with appointed counsel and stated, "I would rather represent myself if I can't get no lawyer.").

 Taylor also claims that the trial court failed to properly warn him of the dangers of self representation and that his decision to proceed pro se was thus not knowing, intelligent, and voluntary. To be sure, when a criminal defendant waives his right to counsel and elects to proceed pro se, we must decide whether the trial court properly determined that the defendant's waiver was knowing, intelligent, and voluntary. *Jones v. State,* 783 N.E.2d 1132, 1138 (Ind.2003). Waiver of the right to assistance of counsel may be established based upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Id.*

 In *Poynter v. State,* 749 N.E.2d 1122 (Ind.2001), our supreme court noted that the federal Seventh Circuit Court of

Appeals considers four factors when determining whether the waiver of the right to counsel was knowing and intelligent:

(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

*Id.* at 1127–28 (quoting *United States v. Hoskins,* 243 F.3d 407, 411 (7th Cir.2001)). It is the trial court who is in the best position to assess whether a defendant has knowingly and intelligently waived counsel. *Id.* at 1128. Thus, "we will most likely uphold the trial judge's decision to honor or deny the defendant's request to represent himself where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion about the defendant's understanding of his rights and voluntariness of his decision." *Id.* (quoting *Hoskins,* 243 F.3d at 410). On appeal, we will review the record to evaluate the trial court's inquiry and reasoning in reaching its conclusion. *Id.*

Taylor notes that, in *Dowell,* our court set forth several guidelines for a trial court to advise the defendant when he considers self-representation. They are:

(1) The defendant should know the nature of the charges against him, the possibility that there may be lesser included offenses, and the possibility of the defenses and mitigating circumstances; (2) the defendant should be aware that self representation is almost always unwise, that he may conduct a defense which is to his own detriment, that he will receive no special treatment from the court and will have to abide by the same standards as an attorney, and

that the State will be represented by experienced legal counsel; (3) the defendant should be instructed that an attorney has skills and expertise in preparing for and presenting a proper defense; and (4) the trial court should inquire into the defendant's educational background, familiarity with legal procedures and rules of evidence and mental capacity.

*Dowell,* 557 N.E.2d at 1066–67.

■ Although our supreme court subsequently endorsed these guidelines, it also held that they "do not 'constitute a rigid mandate setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of the right to counsel is knowing, intelligent, and voluntary.'" *Jones,* 783 N.E.2d at 1138 (quoting *Leonard v. State,* 579 N.E.2d 1294, 1296 (Ind.1991)). Instead, it is sufficient for the trial court to acquaint the defendant with the advantages to attorney representation and the drawbacks of self-representation. *Id.; see also Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that defendant choosing to proceed pro se "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'") (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

■ Here, when faced with Taylor's request to represent himself, the trial court explained that it was "ill advised" to proceed pro se when facing serious criminal charges, and warned Taylor that he could receive a sentence of up to seventy years. The trial court also inquired into Taylor's education, which indicated that Taylor was neither very well educated nor uneducated. The trial court confirmed Taylor's previous contacts with the criminal justice system,

which, according to the presentence investigation report, includes convictions for five felonies and eight misdemeanors. Thus, Taylor was no stranger to the criminal justice system. And Taylor obviously knew that he had the right to counsel because he had already had two different lawyers appointed to represent him at the time he indicated his desire to represent himself, and he indicated that he wished to eventually hire private counsel. Moreover, the trial court judge explained to Taylor that, even though the judge was a lawyer with extensive experience with criminal matters, he would not represent himself if faced with serious criminal charges. The trial court even warned Taylor that such a choice was "foolish," but Taylor remained steadfast in his desire to represent himself. Tr. p. 36.

In terms of the factors adopted in *Poynter*, the trial court's inquiry into Taylor's request to represent himself was not superficial. And Taylor, as someone who had a relatively extensive criminal history, was no naive newcomer to the criminal justice system. Taylor apparently knew the advantages of having an attorney, given his earlier requests to hire a private attorney, his requests to change attorneys, and his claim that he was yet again attempting to retain private counsel. Moreover, the context of Taylor's request to represent himself could be taken as a rather successful attempt to repeatedly delay his trial. In fact, by our count, Taylor received eleven separate continuances of various pre-trial hearings and trial dates. His decision to seek counsel on the eve of trial could easily be seen as yet another attempt at delay.

Beyond the *Poynter* criteria, the impact of Taylor's decision to proceed pro se was readily apparent to him for an extended period of time. Taylor had discovery difficulties for well over ten months as a pro se

defendant before he admitted he needed professional legal representation. This experience should have convinced Taylor to obtain either private counsel or a public defender well before he did so on the eve of trial. But there is a twist to the present case—one that Taylor's brief inexplicably fails to mention. When Taylor, on the eve of trial, admitted that he was unprepared to represent himself, the trial court yet again continued the trial and appointed Taylor yet another public defender, who represented Taylor at trial and sentencing. The trial court's actions under these circumstances were abundantly fair.

Under the facts and circumstances of the present case, we conclude that Taylor's decision to proceed pro se was knowingly, intelligently, and voluntarily made. *See Jones*, 783 N.E.2d at 1139 (concluding that defendant knowingly and voluntarily waived right to counsel where trial court reminded defendant that he was not an attorney trained in the law, would be held to the same standard as an attorney, and warned him, "I advise you [Jones] I don't think it's a good idea. . . . If I was charged with this, I wouldn't want to represent myself."); *cf. Poynter*, 749 N.E.2d at 1128 (concluding that defendant did not knowingly and voluntarily waive right to counsel where trial court simply informed defendant of his trial rights but did not warn him of the dangers and disadvantages of self representation and where defendant had a minor criminal history and unimpressive educational background).

■■■ Moreover, even if we agreed with Taylor that the trial court's advisement was inadequate, Taylor fails to explain how he was prejudiced by anything that occurred during the period in which he represented himself. *See Hernandez v. State*, 761 N.E.2d 845, 850 (Ind.2002) (although burden is on the State to establish harmlessness of error if defendant is denied

right to counsel during a "critical stage," the burden of establishing that there is a critical stage in the first place falls on the defendant). Taylor does not explain how the pre-trial period where he represented himself was a "critical stage." More importantly, he does not even attempt to explain how the subsequent appointment of counsel who represented him during trial and at sentencing was an inadequate remedy for any alleged deprivation of his right to counsel.

### Conclusion

We can only conclude that Taylor was not denied the right to counsel. He clearly and unequivocally expressed his desire to represent himself, and the trial court adequately advised him of the dangers and disadvantages of self representation. Yet Taylor still chose to proceed pro se. When Taylor changed his mind on the day before the scheduled trial, the trial court continued the trial and appointed Taylor counsel. And Taylor was represented by his appointed counsel during trial and at sentencing. Therefore, even if we agreed with Taylor that he had not waived his right to counsel, he fails to explain how the subsequent appointment of counsel to represent him at trial and sentencing was not an adequate remedy.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.