Doran Ray BENNETT, Petitioner,

v.

Jack R. DUCKWORTH, Respondent.

No. 2:95cv079 AS.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 29, 1995.

Doran Ray Bennett, SR–INDIANA–30 Indiana Reformatory, Pendleton, IN, pro se.

Robert L. Collins, Office of Indiana Attorney General, Indianapolis, IN, Pamela Carter, Indiana Attorney General, Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case was reassigned to the undersigned by order of October 6, 1995. On February 16, 1995, *pro se* petitioner Doran Ray Bennett, an inmate at the Indiana Reformatory in Pendleton, Indiana, filed a petition seeking relief under 28 U.S.C. § 2254. The response filed by the respondent on April 28, 1995, demonstrates the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). The petitioner filed a Traverse on June 27, 1995, and the state court record has been filed and examined pursuant to the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The petitioner was convicted of six counts of robbery in 1988 by a jury verdict in the Lake Superior Court at Crown Point, Indiana. He was sentenced to consecutive terms of imprisonment totaling fifty years. A direct appeal was taken to the Court of Appeals of Indiana in 1989, and the Third District of that court, speaking through Judge Staton, affirmed the aforesaid conviction in an unpublished memorandum decision in which Judges Hoffman and Conover concurred. For the immediate reference of all concerned, the memorandum decision is marked as Appendix "A," attached hereto and incorporated herein. No petition to transfer to the Supreme Court of Indiana was taken.

Thereafter, this petitioner revisited the state trial court and initially filed a *pro se* petition for postconviction relief, but was later assisted by the Public Defender's Office of the State of Indiana. An amended postconviction relief petition was filed on his behalf and the state trial court held an evidentiary hearing, following which the court denied the amended postconviction petition. Another appeal was taken from that denial and a second opinion, authored by Judge Garrard, issued from the Court of Appeals on June 28, 1994. For the immediate reference of all concerned, the memorandum decision is marked as Appendix "B," attached hereto and incorporated herein. Judges Hoffman and Barteau concurred. On this decision, the Supreme Court of Indiana denied transfer.

The petitioner now alleges in this § 2254 petition that the state trial court denied his Sixth Amendment right to waive assistance of counsel, recognized by the Supreme Court of the United States in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). He also attempts to challenge the trial court's failure to articulate its reason(s) for imposing consecutive sentences as fundamental error. Finally, the petitioner attempts to raise questions regarding ineffective assistance of his trial counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), and his appellate counsel under *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

A claim under 28 U.S.C. § 2254 requires the federal habeas court to ensure that the state criminal conviction was not achieved at the expense of the plaintiff's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), described the

role of the federal district courts in habeas proceedings:

> A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional 'sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791.

Following *Jackson, supra,* there is an increasingly long line of cases in this circuit which suggest that the facts found by the highest court of a state are presumed to be correct. *See, e.g., Milone v. Camp,* 22 F.3d 693, 697 n. 2 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995); *Cuppett v. Duckworth,* 8 F.3d 1132, 1141 (7th Cir.1993) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994); *Andersen v. Thieret,* 903 F.2d 526, 531 (7th Cir.1990). "This deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings 'lacked even fair support in the record.' " *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983); *see also Mills v. Jordan,* 979 F.2d 1273, 1279 (7th Cir.1992).

In *Jackson v. Virginia,* the Supreme Court set forth the test which federal habeas courts must apply:

> We hold that in a challenge to a conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Id.* at 324, 99 S.Ct. at 2791–92 (footnote omitted); *see also Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); *Armstrong v. Young,* 34 F.3d 421, 426 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1369, 131 L.Ed.2d 224 (1995); *Gomez v. Ahitow,* 29 F.3d 1128, 1134 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Johnson v. Trigg,* 28 F.3d 639, 644 (7th Cir. 1994); *Biskup v. McCaughtry,* 20 F.3d 245, 248 (7th Cir.1994); *Hockett v. Duckworth,* 999 F.2d 1160, 1165 (7th Cir.1993). A review of the record in the light most favorable to the prosecution convinces the court that a rational trier of fact could readily have found the petitioner guilty beyond a reasonable doubt of robbery.

## DISCUSSION

### I. Waiver of Sixth Amendment Right to Counsel

The Sixth Amendment to the Constitution of the United States guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. CONST. amend VI. In *Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), the Supreme Court of the United States recognized that the Sixth Amendment right to the assistance of counsel implicitly embodies a "correlative right to dispense with a lawyer's help." 317 U.S. at 279, 63 S.Ct. at 241. Put another way, the Constitution does not itself force an attorney on an, unwilling criminal defendant. More recently, in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court extended its decision in *Adams* to hold that the Sixth Amendment

also forbids a state from forcing a lawyer upon a defendant who truly wants to defend himself:

> The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Faretta,* 422 U.S. at 834, 95 S.Ct. at 2541 (quoting *Illinois v. Allen,* 397 U.S. 337, 350–51, 90 S.Ct. 1057, 1064–65, 25 L.Ed.2d 353 (1970)).

When federal and state trial judges are confronted with requests for self-representation under *Faretta,* a number of very difficult obligations are placed on them.

> [A] defendant who raises the possibility of representing himself at trial places the ... court between the Scylla of trammeling the defendant's constitutional right to present his own defense ... and the Charybdis of shirking its "constitutional duty to ensure that the defendant only represents himself with full awareness that the exercise of that right is fraught with dangers."

*United States v. Sandles,* 23 F.3d 1121, 1127 (7th Cir.1994) (quoting *United States v. Moya–Gomez,* 860 F.2d 706, 732 (7th Cir. 1988), *cert. denied sub nom. Estevez v. United States,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)). An accused who manages his own defense "relinquishes, as a purely factual matter, many of the traditional benefits associated with the right of counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The trial court therefore must ensure that the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95

S.Ct. at 2541 (quoting *Adams,* 317 U.S. at 279, 63 S.Ct. at 241–42).

■ It is altogether appropriate then—indeed, it is practically obligatory—for the trial judge to raise with the requesting defendant the concerns reflected in this record. The Court of Appeals for the Seventh Circuit has repeatedly stressed that a trial court must conduct a "thorough and formal inquiry" to determine whether a defendant who wishes to proceed *pro se* is making a knowing and intelligent waiver of his right to be represented by counsel, and to educate the accused as to the dangers involved therein. *Sandles,* 23 F.3d at 1126; *United States v. Clark,* 943 F.2d 775, 780 (7th Cir.1991); *United States v. Belanger,* 936 F.2d 916, 918 (7th Cir.1991); *United States v. Berkowitz,* 927 F.2d 1376, 1383 (7th Cir.1991); *United States v. Bell,* 901 F.2d 574, 577 (7th Cir. 1990); *Moya–Gomez,* 860 F.2d at 733. In the present cause, the trial court—after questioning the petitioner to determine whether, in light of his experience, his waiver of counsel could be considered knowing and intelligent—concluded that the petitioner was not minimally competent to conduct his own defense. Moreover, because both the trial court and the Court of Appeals of Indiana determined that the petitioner merely inquired as to the possibility of self-representation and never stated with finality his desire to conduct his own defense, the respondent argues that the petitioner failed to invoke his right to waive counsel "clearly and unequivocally," as required by *Faretta.* Respondent's Brief at 7, 8. *See Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *see also United States v. Oakey,* 853 F.2d 551, 553 (7th Cir.1988), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 977 (1989). Conversely, the petitioner argues that he clearly and unequivocally asserted his right to proceed *pro se* at the hearing, and that the trial court thereafter "let the question drop" instead of conducting a formal inquiry to determine whether the petitioner's waiver of counsel was in fact knowing and intelligent. Petitioner's Brief at 2–3.

■ Whatever the case may be, it is not the task of this court in a habeas proceeding to determine *de novo* whether the petition-

er's waiver was clear and unequivocal or, for that matter, knowing and intelligent. Unlike in the case of a 'straight' federal appeal, in which the reviewing court examines *de novo* the validity of a plaintiff's waiver of counsel, federal courts conducting habeas proceedings are required under 28 U.S.C. § 2254(d) to presume that the factual findings made by state courts are correct if the findings are made after a hearing on the merits and are fairly supported by the record. *Armstrong v. Young,* 34 F.3d 421, 426 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1369, 131 L.Ed.2d 224 (1995); *Gomez v. Ahitow,* 29 F.3d 1128, 1134 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Cuppett v. Duckworth,* 8 F.3d 1132, 1141 (7th Cir.1993) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994); *Lewis v. Huch,* 964 F.2d 670, 671 (7th Cir.1992); *see* 28 U.S.C. § 2254(d)(8) (1994). In *Perri v. Director, Dep't of Corrections,* 817 F.2d 448 (7th Cir.), *cert. denied sub nom. Perri v. Lane,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987), the Court of Appeals for the Seventh Circuit reexamined the issue of whether the § 2254(d) presumption of correctness applies to the validity of a waiver. The Seventh Circuit concluded in *Perri* that because the determination of knowing and intelligent waiver requires an "inquiry into [the defendant's] state of mind" rather than "the application of legal principles," the question of whether a waiver was knowing and intelligent is a factual issue. *Perri,* 817 F.2d at 451. Therefore, the "findings of a state court on questions of whether a defendant understood his or her rights and knowingly and intelligently waived them are entitled to the § 2254(d) presumption." *Id.*

◼ While *Perri* involved the waiver of *Miranda* rights rather than the waiver of assistance of counsel, the Seventh Circuit has since recognized the logical extension of the § 2254(d) presumption to the latter context as well. *See Cain v. Peters,* 972 F.2d 748 (7th Cir.1992) (waiver of right to counsel) (" 'Waiver' in criminal law is a fact-specific concept, to which the presumption of correctness in 28 U.S.C. § 2254(d) applies."), *cert. denied,* 507 U.S. 930, 113 S.Ct. 1310, 122 L.Ed.2d 698 (1993); *see also Gomez,* 29 F.3d at 1134 (waiver of right to conflict-free representation). Because the state trial judge was in a better position than a federal court on collateral review to determine whether the accused (a) clearly and unequivocally asserted his right to self-representation, and (b) knowingly and intelligently waived his right to the assistance of counsel, this court must defer to the subsidiary factual determinations of the state court's conclusion if they are fairly supported by the record. *Lewis,* 964 F.2d at 675.

Approximately one month before trial, the petitioner in the present cause sent a letter to the trial court requesting that the court appoint new counsel. The letter expressed the petitioner's displeasure with his court-appointed public defender, Noah L. Holcomb, Jr., who purportedly refused to take the actions the petitioner desired. At no time, however, did the letter suggest that the petitioner wished to represent himself at trial.[1] In accordance with the petitioner's request to be heard, the trial court held a hearing in open court with the petitioner and his court-appointed public defender, Mr. Holcomb, one week after receiving the petitioner's letter.

The trial court judge began the hearing by informing the petitioner that, if he were financially able to hire a private attorney, he

---

1. The petitioner's letter to the trial court judge stated as follows:

I'm in Jail here at Crown Point, Ind. I have five charges of Robbery and Armed Robbery against me. Cause # s 45G04–8806–CF–00169 45G04–8806–CF–00170 And sir, you appointed Mr. Noah L. Holcomb, Jr. to represent me. He won't take action in my behalf like I have requested. And I can't use Mr. Ernie Clark either. Because Mr. Clark has represented a friend of mine, Mr. Daniel Chester Kyle. And Mr. Kyle was found Guilty of two Robberies *he*

*did not do.* A Class B & C. He was sentenced to 15 years Infact. Thats why I wish to get an Att. appointed to me. That will listen to me. This is Lake. Co. Court. And several people are in bad trouble. They will be sued. But if I Could 'get an Att. That would listen to me. Maybe I could get this mess all cleaned up. Without a pending Law Suit against all people concerned. Could you Please Mr. Clement call me down. And appoint me a different attorney, Id appreciate it Sir.

Tr. 72.

could retain whomever he wished. The judge emphasized, however, that if the petitioner proceeded as an indigent, he would have no choice in whom the court appointed as counsel. The judge explained that the court had appointed Mr. Holcomb, whom the court considered to be well qualified after eight and one-half years as a public defender, to handle the petitioner's defense. After the court declined to appoint a different lawyer for the petitioner, the following discussion ensued:

> THE DEFENDANT: What if I decide to represent myself? Am I allowed to do that?
>
> THE COURT: I don't—you know, I would talk with you about it—what experience do you have, if any?
>
> THE DEFENDANT: None, but I would at least try to—you know—if I can't get no satisfaction out of this man, what am I gonna do?
>
> THE COURT: Well, apparently there is some conflict here that you two are going to have to resolve.
>
> THE DEFENDANT: I tried to, but he won't listen to me.
>
> THE COURT: I say, you're telling me on the one hand that you want to be your own attorney, then you tell me that you have no experience at all. It would be totally inappropriate for me to expect you to represent yourself where you're opposed by a law school graduate, a deputy prosecutor. It certainly would not be a fair trial at all, so I am not going to allow you to do that. Now, there are times when people are permitted to do that, but only if they have some qualification to do it. You're telling me that you have no experience at all, of any kind, you know—there are rules of evidence and procedure that have to be followed. So I respectfully again, am going to decline your request to appoint another public defender for you and I'm also denying your request to be your own attorney and reaffirming your trial for October 17, okay? Gentlemen, I hope we can work out whatever problem there is here.
>
> THE DEFENDANT: Lake County is what put me in big trouble, I'm just trying to get through this big old mess before it even goes any further than this—

Tr. 47–49. It appears from the record that the foregoing colloquy was the only time (prior to his postconviction relief appeal) at which the petitioner suggested he might wish to represent himself. It is important to note that the petitioner never proposed to engage in "hybrid" representation, a disfavored form of representation whereby the defendant acts as co-counsel with a court-appointed attorney or a private attorney. *See McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953–54, 79 L.Ed.2d 122 (1984); *Cain,* 972 F.2d at 749. Rather, it is apparent that, after the court informed him that new counsel would not be forthcoming, the petitioner suggested self-representation as an *alternative* to representation by his court-appointed attorney.

In *Cain v. Peters,* 972 F.2d 748 (7th Cir. 1992), *cert. denied,* 507 U.S. 930, 113 S.Ct. 1310, 122 L.Ed.2d 698 (1993), the Seventh Circuit addressed a situation similar in some respects to that in the present cause. Prior to trial, the petitioner in *Cain* expressed distrust of his court-appointed attorney and asked the trial court to replace the public defender. The trial judge in *Cain* declined to appoint a new public defender, and, as with the present proceeding, the petitioner inquired whether he was entitled to represent himself. Unlike in the present cause, where the trial court elected to retain the petitioner's court-appointed public defender after the petitioner's inquiry, the petitioner in *Cain* resolved his dilemma by hiring private counsel. When Cain claimed on direct appeal that the trial court had denied his right to waive assistance of counsel under *Faretta,* the state appellate court held that Cain had acquiesced in representation by counsel at trial and, thus, by his conduct, had waived the right to defend himself. The Seventh Circuit agreed, pointing out that, "[g]iven the rule that only an informed, and ceremonial, waiver surrenders the right to a lawyer at trial, it follows that a silent or equivocating defendant forfeits the inconsistent right to represent himself." *Cain,* 972 F.2d at 750.

■ ██ Analogously, the petitioner in this cause appears to have acquiesced in repre-

sentation by his court-appointed counsel. The petitioner raised the possibility of proceeding *pro se* at the pretrial hearing, but never again mentioned the issue of self-representation after the trial court judge declined to appoint a replacement public defender. In *Faretta,* the Supreme Court concluded that a criminal defendant who wishes to proceed without counsel must be allowed to do so "[u]nless the accused has acquiesced in such representation." *Faretta,* 422 U.S. at 821, 95 S.Ct. at 2534. In *Cain,* the Seventh Circuit concluded, "The implication is clear: defendants forfeit self-representation by remaining silent at critical junctures before or during trial." *Cain,* 972 F.2d at 750. Unlike in *Faretta,* where "weeks before trial, [the defendant] clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, and thereafter never wavered in his invocation of that right, the petitioner in the present habeas proceeding merely inquired about the possibility of self-representation as an alternative to existing counsel, asking, "What if I decide to represent myself? Am I allowed to do that?" Tr. 47. After the trial judge encouraged the petitioner and his appointed counsel to "work out whatever problem there is here," the petitioner's only response was, "Lake County is what put me in big trouble, I'm just trying to get through this big old mess before it even goes any further than this—." *Id.* at 49. Surely this does not constitute the sort of "clear and unequivocal" declaration contemplated by the Supreme Court in *Faretta.*

The Supreme Court of Indiana has also dealt in a similar context with a defendant's request to proceed *pro se.* In *Anderson v. State,* 267 Ind. 289, 370 N.E.2d 318 (1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786 (1978), the defendant repeatedly expressed a desire to procure private counsel rather than to be represented by appointed counsel. He was unable to do so, whether due to a lack of resources or because of a not-too-sincere desire to follow through on his expressed intentions. The defendant's only mention of self-representation came after the trial court had attempted for five weeks to accommodate him. The trial court judge finally instructed the defendant, "You either will employ private counsel or accept the counsel the court appoints for you or you will have to represent yourself." *Anderson,* 370 N.E.2d at 320. The defendant replied, "I would rather represent myself if I can't get no [private] lawyer." *Id.* The state supreme court held that the foregoing remark did not constitute a "clear and unequivocal" assertion of the right to proceed *pro se,* and thus concluded that the defendant's *Faretta* claim was without merit. *Id.* at 320–21.

■ Assuming, *arguendo,* that this petitioner's conduct during the pre-trial hearing was sufficiently clear and unequivocal to declare his wish to proceed *pro se*—and this court does not believe that it was—then the court would need to decide whether there was a knowingly and intelligent waiver of the petitioner's right to counsel under *Faretta.* In *United States v. Moya–Gomez,* 860 F.2d 706, 735–36 (7th Cir.1988), *cert. denied sub nom. Estevez v. United States,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989), the Seventh Circuit set forth a four-part analysis to be used in determining whether there was a knowing and intelligent waiver of the right to counsel.[2] In making this determination, the court must consider (1) whether and to what extent the court conducted a formal inquiry; (2) whether there is other evidence in the record to establish that the defendant in fact understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to proceed *pro se. See also United States v. Sandles,* 23 F.3d 1121, 1126 (7th Cir.1994); *United States v. Bell,* 901 F.2d 574, 577–79 (7th Cir.1990). Notwithstanding the preceding analysis, however, the Seventh Circuit has repeatedly stressed that "in determining whether a defendant has knowingly and intelligently waived his sixth amendment right

---

**2.** While the test is more commonly applied on direct appeal in the context of a claim that the trial court failed to adequately inform a defendant of the risks inherent in proceeding *pro se,* the analysis is also instructive in the situation where a trial court is alleged to have improperly denied a request for self-representation.

we will 'indulg[e] every reasonable presumption against the waiver.'" *United States v. Belanger,* 936 F.2d 916, 919 (7th Cir.1991) (quoting *Wilks v. Israel,* 627 F.2d 32, 35 (7th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981)).

■ A federal habeas court examines the same four factors in determining whether there was an unconstitutional deprivation of the Sixth Amendment right to counsel or its correlative right to dispense with counsel. However, because the trial court's conclusion is based upon subsidiary factual determinations (and thus is subject to the § 2254(d) presumption), the issue in a habeas proceeding is not whether the trial court made a *correct* determination, but only whether its factual findings were made after a hearing on the merits and are fairly supported by the record.

On initial review, the trial court's inquiry in the present cause does not appear to have been the "careful, thorough discussion" this circuit's Sixth Amendment self-representation jurisprudence suggests is necessary. *See, e.g., Belanger,* 936 F.2d at 919. Here, the trial judge briefly engaged the petitioner in a discussion about the petitioner's experience (or lack thereof) and remarked on the unfairness that would result under the circumstances, in light of the deputy prosecutor's significant experience and abilities. While the trial court did caution the petitioner that "[t]here are rules of evidence and procedure that have to be followed," Tr. 48, the record reflects no discussion of the petitioner's educational attainments or the nature of the charges against him. Further, there appears to have been no mention of the dangers involved in proceeding *pro se,* foremost among which is the sentencing exposure for the crimes alleged. And while the trial court did highlight the disadvantages of proceeding *pro se*—at least in terms of unfairness and lack of knowledge of rules of certain legal rules—this court cannot discern any other evidence in the record which establishes that the trial court took steps to ensure that the defendant in fact understood the disadvantages of self-representation. The Seventh Circuit has held that

[t]he judicial inquiry and educative effort concerning the importance of legal representation that must necessarily precede any knowing and intelligent waiver of counsel cannot be cursory or by-the-way in nature; .... [A]t a minimum, [the court must] inquire of the defendant's age and level of education, and inform him of the crimes with which he was charged, the nature of those charges, and the possible sentences they carry. Further, a defendant should be made aware of the "difficulties he would encounter in acting as his own counsel."

*Belanger,* 936 F.2d at 918 (quoting *Moya–Gomez,* 860 F.2d at 732).

In the present cause, the fourth factor in the *Moya–Gomez* analysis weighs in favor of finding a knowing waiver. The record shows that the petitioner's decision to proceed *pro se* was motivated *entirely* by his inability to persuade his court-appointed public defender to conduct his defense in the manner the petitioner desired—clearly a tactical decision. This circuit has consistently held that "waiver will *more likely* be found where a defendant's decision to represent himself appears tactical or strategic in nature." *Sandles,* 23 F.3d at 1129 (emphasis supplied); *see Bell,* 901 F.2d at 579 (tactical decision to proceed *pro se* in response to counsel's unwillingness to pursue a particular theory of defense supports finding of a knowing waiver); *Moya–Gomez,* 860 F.2d at 737 (tactical decision to proceed *pro se* as a result of trial court's resolution of an attorneys' fees question supports finding of a knowing waiver). However, while this factor weighs in favor of finding a knowing waiver, it does not in itself mandate a finding that the petitioner knowingly and intelligently waived his right to counsel. Certainly, it does not overcome the § 2254(d)(8) presumption of correctness regarding the trial court's factual finding.

■ Notwithstanding a reviewing court's consideration of the factors set forth above, the Seventh Circuit has stated that "[t]he real question when a criminal defendant waives counsel is not the quality of the judge's inquiry; rather, it is whether.... the record as a whole demonstrates that the defendant knowingly and voluntarily waived

his right to counsel." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991). In the present cause, the trial court judge found the petitioner's request for self-representation to be unclear and equivocal. After briefly engaging the petitioner in a discussion as to his qualifications, the trial court determined that the petitioner was not minimally competent to conduct his own defense. However, the trial court's arguably abbreviated colloquy with the petitioner should not be construed as a failure of its duty to conduct a formal inquiry. This court finds that upon consideration of the record as a whole, the state court's factual determination that the petitioner did not make a knowing and intelligent waiver is fairly supported by the record and, accordingly, must be upheld.

■ The petitioner also claims that, as a result of the alleged denial of his *Faretta* right to self-representation, he was denied access to the courts under *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In order to substantiate a claim of denial of access to the courts, a prisoner must satisfy a two-part test:

> First, the prisoner must show that prison officials failed to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Providing adequate scribe materials is included within the actions required of prison officials. Second, he must show some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation.

*Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir.1995) (citations omitted). The petitioner has not shown how prison officials failed to assist him in perfecting his defense or appeal, nor has he shown any detriment resulting from the actions (or inaction) of prison officials. Moreover, the petitioner was assisted by court-appointed counsel at all relevant times, and he has not alleged that he missed any court dates, or that he was unable to make any timely filings. The court therefore finds that the petitioner's claim

that he was denied access to the courts under *Bounds* is completely without merit.

## II. Consecutive Sentences

The petitioner claims that the trial court erred when it enhanced his sentences without making a record of its reason(s) for doing so. Specifically, the petitioner contends that, because Ind.Code § 35–38–3–1 requires the trial court to state its reasons for selecting the sentence it imposes in a record made at the sentencing hearing, the trial court committed fundamental error by failing to articulate the aggravating factors it used in ordering the petitioner's sentences served consecutively. Petitioner's Brief at 6. The petitioner does not argue—nor can he—that his sentence is fundamentally unfair, or that it is so unfair as to constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Apparently, the petitioner's sole contention on collateral review regarding his sentences is that the trial court failed to record its reasons for enhancing the penalties at the sentencing hearing.

■ The fact that the trial court allegedly failed to state its reasons for enhancing the petitioner's sentence during the sentencing hearing is not itself a basis for federal habeas relief. Although it has been stated many times before, the court today reemphasizes that a federal habeas court does not sit to review questions of state law. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). The petitioner's sentences—as well as any procedural issues related to those sentences—were within the statutory authority of the State of Indiana, and it is not for this court to wade into questions of state law. *See Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir.1995); *Burris v. Farley*, 51 F.3d 655, 659 (7th Cir.1995); *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1385 (7th Cir. 1994) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 1404, 131 L.Ed.2d 290 (1995). The court therefore will not consider the merits

of the petitioner's claim that the Indiana courts misapplied their own state law.[3] Moreover, while a violation of state law may sometimes result in a denial of due process (and thus constitute a cognizable claim on collateral review), that is not the case here. The record discloses sufficient evidence of the reasons underlying the trial court's sentencing decision to avoid due process concerns. Thus, for the reasons discussed above, the petitioner's claim that the trial court committed fundamental error with regard to his consecutive sentences is not cognizable under 28 U.S.C. § 2254.

## III.  Ineffective Assistance of Counsel

The petitioner apparently contends that his court-appointed trial and appellate counsel rendered constitutionally ineffective representation by failing to (a) file a motion to correct errors; (b) investigate the type of aggravating factors the State potentially would use against him at sentencing; and (c) raise the fundamental issue of self-representation under *Faretta*. The petitioner's trial counsel and appellate counsel were not the same person; thus, in reality his claim comprises two separate claims of ineffective assistance of counsel. Because his complaint is not a model of organization and clarity, the court will assume for purposes of analysis that the petitioner's allegations of ineffective assistance fall within the respective boundaries of trial and appellate representation, and will confine its discussion accordingly.

### A.  Trial Counsel

██  Certainly, the petitioner's claims with regard to ineffective assistance of trial counsel must be examined under *Strickland* and *Lockhart*. To prevail on a claim of constitutionally ineffective assistance of counsel, the petitioner must show that (1) his counsel's representation fell below an objective standard of reasonableness (*i.e.*, deficient performance); and (2) there is a reasonable probability that, but for his counsel's error(s), the result of the proceeding would

have been different (*i.e.*, prejudice). *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Bergmann v. McCaughtry*, 65 F.3d 1372, 1379 (7th Cir.1995). The 'prejudice' component, however, does not merely question whether the outcome would have been different. In order for the deficient performance to rise to the level of a constitutional violation, the petitioner must show that his counsel's performance "so prejudiced [his] defense as to render the result of [his] trial 'fundamentally unfair or unreliable.' " *United States v. Kellum*, 42 F.3d 1087, 1094 (7th Cir.1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993); *see also Williams v. Washington*, 59 F.3d 673, 679 (7th Cir.1995); *United States v. Woody*, 55 F.3d 1257, 1271–72 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 234, 133 L.Ed.2d 163 (1995). The Supreme Court noted in *Strickland* that

> [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... Because of the difficulties inherent in the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted); *see also Bergmann*, 65 F.3d at 1379.

In the present cause, the petitioner's claim that his court-appointed trial counsel rendered ineffective assistance is without merit. First, the petitioner's allegation that his public defender failed to file a motion to correct errors, Petitioner's Brief at 4, is not supported by the record. The trial court sentenced the petitioner on November 17, 1988, following which the court directed his public defender, Mr. Holcomb, to file a timely motion to correct errors. After denying trial

---

**3.**  Although the court does not reach the merits of the petitioner's argument in dismissing his collateral claim, the record clearly indicates both the aggravating factors and the mitigating factors the

trial court relied upon at the sentencing hearing in deciding to impose consecutive sentences. *See* Tr. 267–70.

counsel's motion to withdraw on December 15, 1988, the trial court again instructed counsel to file a timely motion to correct errors—the record shows that Mr. Holcomb filed the petitioner's motion to correct errors the same day. Tr. 66. Certainly, there is no basis in fact for the petitioner's allegation that trial counsel failed to file a motion to correct errors.

The court presumes, upon reviewing the record, that the petitioner *intended* to allege—as did his counsel on appeal from denial of postconviction relief—that his trial counsel failed to preserve the issues of self-representation and the inadequacy of the sentencing statement in the motion to correct errors. *See* PCR Record at 41. However, the petitioner fares no better if this is his intended argument. Under the two-pronged *Strickland* standard, the performance of the petitioner's trial counsel cannot be deemed to have fallen below an objective standard of reasonableness where the issues he failed to raise in the motion to correct errors had no objective merit. As the court has discussed, *supra,* there was no Sixth Amendment violation under *Faretta,* and; although the issue of the sentencing statement's adequacy is a question of state law not cognizable in a federal habeas proceeding, the discussion of aggravating factors in the trial court sentencing record, Tr. 268–270, appears to foreclose any claim that trial counsel's performance was objectively unreasonable. Nor can the petitioner show that his trial counsel's performance was so deficient that it rendered the result of either the trial or the sentencing proceeding unfair or unreliable. For these reasons, the court finds that the petitioner's trial counsel did not render ineffective assistance with regard to the motion to correct errors.

▉▉▉ The petitioner's second allegation, that his trial counsel rendered constitutionally ineffective assistance by failing to investigate the type of aggravating factors the State might use against him at sentencing, is similarly without merit. In addressing allegations that an attorney failed to investigate, a court must determine whether counsel's decision that a particular investigation was unnecessary was objectively reasonable at the time the decision was made. *Williams,* 59 F.3d at 679–80; *Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir.1987). Put another way, the court must determine whether counsel's decision "fell outside the range of professionally competent assistance." *Lilly v. Gilmore,* 988 F.2d 783, 785 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993). However, the failure to investigate cannot be used as a substitute for proof of prejudice. *Williams,* 59 F.3d at 684. In order to determine whether counsel's decision was so prejudicial that the result of the proceeding was rendered fundamentally unfair or unreliable, *Lockhart,* 506 U.S. at 368, 113 S.Ct. at 842; *United States v. Allender,* 62 F.3d 909, 913 (7th Cir.1995), "a petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing ... 'a comprehensive showing as to what the investigation would have produced.'" *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1133 (7th Cir. 1990) (quoting *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir. 1987)). The petitioner has not met his burden.

Even assuming the petitioner is correct in contending that Mr. Holcomb failed to investigate the type of aggravating factors the State might use at the sentencing, the petitioner cannot show that counsel's alleged failure to investigate prejudiced him, particularly since he does not allege what specific challenges should have been made to the sentencing enhancements had the investigation been pursued. The record shows simply that counsel chose not to offer evidence in mitigation at the sentencing; it does not show that trial counsel failed to investigate. Moreover, an investigation of the aggravating factors available to the trial court under Ind.Code § 35–38–1–7.1 would have been most unfavorable to the petitioner, given his prior record. Trial counsel's performance did not prejudice the petitioner, nor did it

deprive him of a fair hearing. Absent evidence in the trial record that the proceeding was rendered fundamentally unfair or unreliable by counsel's decision not to present evidence in mitigation, there can be no ineffective assistance of counsel. No such evidence exists here.

Finally, the petitioner contends that his trial counsel provided ineffective assistance in failing to raise the fundamental issue of self-representation in the motion to correct errors. As discussed above, upon consideration of the record as a whole, the state court's factual determination that the petitioner did not make a knowing and intelligent waiver of the Sixth Amendment right to counsel is fairly supported by the record. Thus, because there was no constitutional violation of the right to dispense with counsel under *Faretta,* the court would be hard-pressed to find that the petitioner's trial counsel rendered constitutionally ineffective assistance by failing to raise an issue the court has concluded is without merit.

### B. Appellate Counsel

■ The next question is whether there was some relevant ineffectiveness as to the direct appeal under *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The Due Process Clause of the Fourteenth Amendment guarantees a state criminal defendant the right to effective assistance of counsel on the first appeal as of right. *Evitts,* 469 U.S. at 396, 105 S.Ct. at 836. In order to prove ineffective assistance of appellate counsel, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). That is, he must establish that (1) his appellate counsel's performance fell below "an objective standard of reasonableness, *id.* at 688, 104 S.Ct. at 2064, and (2) counsel's performance prejudiced the outcome such that it rendered the proceeding fundamentally unfair or made the result unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 368–73, 113 S.Ct. 838, 842–44, 122 L.Ed.2d 180

(1993); *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

■ Although a panel of the Court of Appeals of Indiana concluded in reviewing the denial of postconviction relief that the petitioner's counsel on direct appeal had not rendered ineffective assistance, *see Bennett v. State,* No. 45A03–9309–PC–329, at 9, 636 N.E.2d 1291 (Ind.Ct.App. June 28, 1994) (mem.), the state court's findings are not binding on this court in a federal habeas proceeding. A state court's findings that counsel performed adequately, and that any shortcomings in his representation did not prejudice the defendant's case, are not findings of fact under 28 U.S.C. § 2254(d), but are instead mixed questions of law and fact subject to independent review. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Balfour v. Haws,* 892 F.2d 556, 563 (7th Cir.1989). The court therefore has made an independent examination of the state court record in order to determine whether counsel rendered effective assistance on direct appeal. *See Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

■ However, the petitioner fares no better through this court's independent review of his claim of ineffective assistance of appellate counsel. Because the petitioner's counsel, James Stanton, did not represent the petitioner until after the trial court had ruled on the motion to correct errors, the only remaining claims are that counsel failed to raise the issues of self-representation and inadequate sentencing statement. In both instances, counsel for the petitioner presumably determined—as the court has—that those claims were without merit. Counsel's failure to raise claims with no merit cannot satisfy the standard of *Strickland v. Washington* for ineffective assistance of counsel.

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. IT IS

**SO ORDERED.**

APPENDIX A ■

IN THE

COURT OF APPEALS OF INDIANA

THIRD DISTRICT

Doran Bennett, Appellant
(Defendant Below),

v.

STATE OF INDIANA, Appellee
(Plaintiff Below).

No. 45A03–8903–CR–112

APPEAL FROM THE LAKE SUPERIOR
COURT

The Honorable James Clement, Judge

Cause No. 45G04–8806–CF–169

*ATTORNEY FOR APPELLANT:*

JAMES F. STANTON
Appellate Public Defender
Lake Superior Court
2293 North Main Street
Crown Point, IN 46307

*ATTORNEYS FOR APPELLEE:*

LINLEY E. PEARSON
Attorney General of Indiana

MICHAEL GENE WORDEN
Deputy Attorney General

219 State House
Indianapolis, Indiana 46204

STATON, J.

*MEMORANDUM DECISION*

A Lake Superior Court jury found Doran R. Bennett guilty of four counts of robbery, a class B felony, and two counts of robbery, a class C felony.[1] He received consecutive sentences amounting to 50 years imprison-

ment. On appeal, Bennett raises the question of whether the evidence was sufficient to support his convictions?

We affirm.

Bennett contends that there was insufficient identification evidence to convict him of Counts I through IV; to wit, two counts of B felony robbery and two counts of C felony robbery.[2] The evidence most favorable to the verdict shows that victims of each of the above-referenced robberies testified that they had identified Bennett prior to trial from a six-subject photographic array compiled by investigating police officers. A photocopy of the array was admitted at trial in accompaniment to said testimony. Each victim also identified Bennett in-court as the perpetrator of their respective robberies.

Bennett argues that the out-of-court identifications were inadmissible due to the unduly suggestive nature of the photographic array. Bennett concomitantly argues that the in-court identifications were inadmissible because insufficient evidence was presented to support a conclusion that they were based upon observations independent from the allegedly tainted pre-trial identifications. However, the record demonstrates that Bennett failed to challenge the introduction of the photographic array, testimony concerning the array or the in-court identification either by motion to suppress or objection at trial. He additionally neglected to raise these issues in his motion to correct errors. Any error has therefore been waived. *Outlaw v. State* (1985), Ind., 484 N.E.2d 10, 13; *Ard v. State* (1985), Ind., 483 N.E.2d 64, 65.

We nonetheless conclude that the pretrial identification procedures used in this case did not suffer the infirmity of undue suggestiveness. Bennett argues that the photographic array was impermissibly suggestive in that the victims were shown "only" six pictures, thereby allegedly raising the inference that a

---

**2.** Bennett admitted guilt to the remaining charges at his sentencing hearing.

**1.** West's AIC 35–42–5–1.

suspect was included therein. This argument is without merit. Undue suggestiveness is not raised by display of a number of pictures for identification purposes, but only by accompanying such display with graphic or verbal indications tending to single out one of the photographs as that of the suspect. *Pettiford v. State* (1987), Ind., 506 N.E.2d 1088, 1089. The fact that "only" six pictures were used, therefore, does not by and of itself constitute an impermissibly suggestive array.

The question of whether an identification was the product of unduly suggestive procedures is resolved by examining the totality of the surrounding circumstances to determine whether the procedures used gave rise to the likelihood of irreparable misidentification. *Lee v. State* (1988), Ind., 519 N.E.2d 146, 147. We have carefully reviewed the testimony of the victims and conclude that each had sufficient opportunity to view the criminal at close range during the crimes to provide identifications. All provided accurate descriptions of Bennett and immediately chose his picture from the array. The victims were not informed that a suspect was included in the array, nor were they aware of the results of other viewings when tendering their independent identifications. The positioning of Bennett's picture within the array was not such as to single it out from the others, nor were there remarkable disparities in age or facial features among the participants. The overall circumstances presented in this case lead us to conclude that the identifications were not impermissibly suggestive. The evidence is therefore sufficient to sustain Bennett's convictions. *Collins v. State* (1989), Ind.App., 540 N.E.2d 85, 88, *trans. pending* (identification made by a single witness is sufficient to support a conviction).

The judgment of the trial court is affirmed.

HOFFMAN, J., and CONOVER, J., CONCUR.

APPENDIX B ■

IN THE

COURT OF APPEALS OF INDIANA

THIRD DISTRICT

Doran Ray Bennett, Appellant–Petitioner

vs.

State of Indiana, Appellee–Respondent.

No. 45A03–9309–PC–329

APPEAL FROM THE LAKE SUPERIOR COURT, CRIMINAL DIVISION

The Honorable James L. Clement, Judge

Cause No. 45G04–8806–CF–00169

*ATTORNEY FOR APPELLANT:*

SUSAN K. CARPENTER
Public Defender of Indiana

JOHN A. ENGLAND
Deputy Public Defender

Office of Public Defender
Indianapolis, IN 46204

*ATTORNEYS FOR APPELLEE:*

PAMELA CARTER
Attorney General of Indiana

LISA M. PAUNICKA
Deputy Attorney General

Office of Attorney General
Indianapolis, IN 46204–2794

Filed June 28, 1994

*MEMORANDUM DECISION*

GARRARD, J.

A jury convicted Bennett of six counts of robbery. We affirmed his conviction on direct appeal in a memorandum decision.

He now appeals from a denial of post-conviction relief pursuant to Ind.Post–Conviction Rule 1. We affirm.

Bennett presents the following issues:

I. Whether Bennett received ineffective assistance of trial and appellate counsel.

II. Whether Bennett was denied his right to self-representation at trial.

III. Whether the trial court committed reversible error when imposing consecutive sentences.

Bennett, in a post-conviction proceeding, has the burden of proving grounds for relief by a preponderance of the evidence. *Music v. State* (1986), Ind., 489 N.E.2d 949, 950. In reviewing the trial court's denial of the petition for post-conviction relief, we do not weigh evidence or judge the credibility of witnesses. *Id.* We will reverse only if the evidence is without conflict and leads to one reasonable conclusion which is contrary to that reached by the trial court. *Id.*

Post-conviction relief is not a substitute for direct appeal; it is a special remedy whereby a party can raise an error which was not available or known at the time of trial or direct appeal. *Id.; Phillips v. State* (1982), Ind., 441 N.E.2d 201, 203. Any issue which was or could have been addressed at trial or direct appeal is not a proper subject for post-conviction relief. *Music*, 489 N.E.2d at 950.

### *Ineffective Counsel*

Bennett argues that he received ineffective assistance of counsel at trial and at the appellate level. Ineffective assistance of counsel claims are reviewed under a "reasonably effective assistance" standard. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 307–08. "Counsel is presumed competent, and appellant must present strong and convincing evidence to rebut the presumption." *Id.*, citing *Strickland v. Washington*, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).

If Bennett establishes that certain errors of counsel were unreasonable, he must then show that the errors resulted in prejudice to his defense. *Burr*, 492 N.E.2d at 308. In order to demonstrate prejudice, a defendant must show that, but for counsel's deficient

performance, the result of the proceedings would have been different. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1372.

Bennett bases his ineffective assistance of counsel argument upon two alleged errors which he contends both trial and appellate counsel committed.

### *Self-representation*

Initially Bennett argues that he received ineffective assistance of counsel because his trial counsel failed to assert Bennett's right to self-representation, and his appellate counsel failed to assert this "error" on direct appeal.

The sixth amendment to the United States Constitution guarantees a criminal defendant the right to represent himself when he voluntarily and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 835 [95 S.Ct. 2525, 2541, 45 L.Ed.2d 562] (1975); *Anderson v. State* (1977), Ind. [267 Ind. 289,] 370 N.E.2d 318, 320, *cert. denied*, 434 U.S. 1079 [98 S.Ct. 1273, 55 L.Ed.2d 786] (1978). In order to assert the right to self-representation, a defendant must make a clear and unequivocal request. *Anderson*, 370 N.E.2d at 320. When a defendant properly asserts his right to self-representation, the court should determine the defendant's competency to represent himself. *Dowell v. State* (1990), Ind.App., 557 N.E.2d 1063, 1067 ("the trial court should inquire into the educational background of the defendant, the defendant's familiarity with legal procedures and rules of evidence ....").

In *Anderson*, the defendant stated, "I would rather represent myself if I can't get no [private] lawyer." *Id.* Our supreme court held that Anderson had not "clearly and unequivocally" asserted his right to proceed pro se, and therefore concluded that Anderson's *Faretta* argument was without merit. *Id.* at 320–21.

In the instant case, Bennett sent a letter to the judge prior to trial wherein Bennett expressed his displeasure with his court appointed counsel.[1] After receiving the letter

---

1. The letter stated (with original spelling and grammar):

I'm in Jail here at Crown Point, Ind. I have charges of Robbery and Armed Robbery against me. Cause #s 45G04–8806–CF–00169

the court conducted a hearing which Bennett and his court-appointed attorney attended. The following colloquy between Bennett and the trial court occurred:

> Bennett: What if I decide to represent myself? Am I allowed to do that?
>
> Court: I don't—you know, I would talk with you about it—what experience do you have, if any?
>
> Bennett: None, but I would at least try to—you know—if I can't get no satisfaction out of this man, what am I gonna do?
>
> Court: Well, apparently there is some conflict here that you two are going to have to resolve.
>
> Bennett: I tried to, but he won't listen to me.
>
> Court: I say, you're telling me on the one hand that you want to be your own attorney, then you tell me that you have no experience at all. It would be totally inappropriate for me to expect you to represent yourself where you're opposed by a law school graduate, a deputy prosecutor. It certainly would not be a fair trial at all, so I am not going to allow you to do that. Now, there are times when people are permitted to do that, but only if they have some qualification to do it. You're telling me that you have no experience at all, of any kind, you know—there are rules of evidence and procedure that have to be followed. So I respectfully again, am going to decline your request to appoint another public defender for you and I'm denying your request to be your own attorney and reaffirming your trial for October 17th,

okay? Gentlemen, I hope we can work out whatever problem there is here.

Record at 130–31.

The instant case does not present a situation where a defendant, "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." *Anderson,* 370 N.E.2d at 320, quoting *Faretta,* 422 U.S. at 835 [95 S.Ct. at 2541]. Bennett initially told the judge he was not happy with his court appointed attorney. Bennett then tentatively raised questions regarding self-representation.

The post-conviction court considered this issue and concluded:

> The transcript of the hearing held several weeks before trial shows that the hearing was held not for the purpose of determining the defendant's competency or for establishing a record of a waiver of the right to counsel. It was held for the purpose of the trial judge dealing with the very common problem of a defendant not getting along with his court appointed counsel. At the hearing, the judge responded to the petitioner's questions about self-representation by pointing out some of its pitfalls and then stating that he would not permit it at that time. Basically, the judge tried to patch things up between petitioner and counsel before trial, and the transcript shows that the petitioner did not pursue the issue of self-representation when the court gave him the chance.

Record at 78–79.

We agree with the reasoning of the post-conviction court, Bennett did not adequately pursue the issue of self-representation; no error occurred here.

### Consecutive Sentences

Bennett also claims the trial court erred in ordering that his sentences be served consec-

---

45G04–8806–CF–00170 And Sir, you appointed Mr. Noah L. Holcomb, Jr. to represent me. He won't take action in my behalf like I have requested. And I can't use Mr. Ernie Clark either. Because Mr. Clark has represented a friend of mine, Mr. Daniel Chester Kyle. And Mr. Kyle was found Guilty of two Robberies *he did not do.* A Class B & C. He was sentenced to 15 years Infact. Thats why I wish to get an Att. appointed to me. That will listen to me.

This is Lake Co. Court. And several people are in bad trouble. They will be sued. But if I Could get an Att. That would listen to me. Maybe I could get this mess all cleaned up. Without a pending Law Suit against all people concerned. Could you Please Mr. Clement call me down. And appoint me a different attorney. Id appreciate it Sir.

Record at 72.

utively. Bennett was convicted of six counts of robbery; four counts were class B felonies, and two were class C felonies.

The determination of a sentence is within the sound discretion of the trial court. *Berry v. State* (1990), Ind.App., 561 N.E.2d 832, 840. If the trial court imposes consecutive sentences, it is required to include a statement indicating the reason for selecting the sentence imposed. *Pearson v. State* (1989), Ind.App., 543 N.E.2d 1141, 1144. The statement should:

(1) identify the significant mitigating and aggravating circumstances found;

(2) state the facts and reasons which lead the court to find each circumstance; and

(3) demonstrate that the circumstances have been balanced in determining the sentence.

*Id.* A lone aggravating factor may support the imposition of consecutive sentences. *Berry,* 561 N.E.2d at 840.

Bennett contends that the sentencing judge "gave no particularized reason whatsoever to support consecutive sentences." Appellant's brief at 20.

The trial judge sentenced Bennett as follows:

Four class B felonies, each carrying, of course, the penalty up to twenty years. If the court were to impose the maximum and order them served consecutively as requested by the prosecutor, that would be a total of eighty (80) years. Two class C felonies carry a maximum of eight years apiece. If the court would impose the outer perimeter[,] the maximum here, you would be talking about ninety-six (96) years. [T]here was an armed robbery first in Illinois. You were given ten (10) years. [W]ithin a year, '83, you were again charged and convicted of robbery here in Indiana. At that time you were given another ten (10) years. You were apparently out sometime ... and then within thirty days charged again with a number of robberies, four of them armed. I really don't know what you expect the court to do, Mr. Bennett. It appears that to protect society the court is going to have to keep you incarcerated for a long period of time. Many people after a ten year term hopefully would not be back before the court again.... I have before the court here, two prior robberies. I'm going to impose the presumptive of ten years on each of the four class B robberies, order them served consecutively. I'm going to impose the presumptive of five years on each of the class C felonies and order them served consecutively, imposing a total of fifty years here, Mr. Bennett.

Record at 267–69.

The trial court also stated during sentencing that it was "commendable" that Bennett committed these robberies in order to provide for his family rather than purchase drugs, and for taking responsibility for a robbery in which one of his friends had been charged. The court noted that Bennett on two previous occasions had been convicted of robbery. The court also noted that Bennett's second robbery was committed within a few months of being released from prison for the first robbery, and that the six robberies in this case were committed within one month of Bennett's release from prison for the second robbery. Bennett also committed the robberies while on parole. The court's failure to use the words "mitigating" and "aggravating" is not fatal in this case. The judge cited three aggravating factors: (1) two prior robbery convictions; (2) commission of the instant robberies soon after release from prison for other robbery convictions; and (3) commission of the instant robbery while on parole. The fact that these factors are aggravating opposed to mitigating is clear and that the aggravating factors outweigh any mitigating factors is also clear.

The trial court did not err in responding to Bennett's statement regarding self-representation or in sentencing Bennett. Since no error occurred, Bennett cannot claim his trial counsel's performance was deficient. *Gann v. State* (1991), Ind.App., 570 N.E.2d 976, 978. It follows that appellate counsel cannot be faulted for failing to raise a claim that is without merit.

Affirmed.

HOFFMAN, J. and BARTEAU, J. Concur.